UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EUSTACIO ROBERTS,

                          Petitioner,                         **REPORT & RECOMMENDATION**
                                                                    **19 CV 880 (AMD)(LB)**

     -against-

JAIME LAMANNA,

                          Respondent.
-----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Petitioner, Eustacio Roberts, files this *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 challenging his 2014 Kings County Supreme Court conviction for Murder in the Second Degree (N.Y. Penal Law § 125.25). The Honorable Ann M. Donnelly referred this matter to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, I respectfully recommend that the petition should be denied.

## BACKGROUND

### I.      The Underlying Crimes

      According to the evidence adduced at trial,[1] on April 28, 2010 around 7:20 p.m., petitioner broke into the house of his long-time paramour, Maritza Jolliffe, at 723 East 81st Street in Brooklyn, and stabbed her fifteen times with a kitchen knife, causing her death. T.T. at 31–32, 41, 550, 690, 721, 781. At the time of the underlying crime, Jolliffe had a close friend named Leo Roche who she was spending more time with, id. at 540, which the prosecution argued sparked petitioner's "anger and his jealousy[.]" Id. at 463, 751. Approximately three weeks prior to her

---

[1] Petitioner was tried by a jury in Kings County Supreme Court from July 29, 2014 to August 8, 2014 before the Honorable Deborah A. Dowling. Trial Transcript, ECF No. 5-1 at 10–965. References to the trial transcript (hereinafter "T.T.") are to the ECF page numbers.

murder, Jolliffe had ousted petitioner from their shared home because petitioner had physically assaulted her on several occasions. Id. at 542–46, 712–15.

In addition to her home at 723 East 81st Street, Jolliffe owned the home across the street, where her daughter from a previous marriage, Vonetta Alexander, lived. Id. at 535–36, 539. After Jolliffe expelled petitioner from their shared home, she allowed him to stay in the basement of Vonetta's home.[2] Id. at 546, 716. Petitioner was residing in Vonetta's basement leading up to Jolliffe's murder. Id.

On April 28, 2010, petitioner broke into Jolliffe's home through a window. Id. at 582, 721. Tanishka Alexander, Jolliffe's niece, testified that she heard screaming and glass breaking, and that she encountered petitioner, who said, "I'm gonna kill the bitch" while holding a butcher knife. Id. at 695–97.

Jolliffe and Noah Roberts, her son with petitioner, sought refuge in the basement apartment; Noah put Jolliffe in the basement bedroom to protect her. Id. at 722. Petitioner followed, breaking down the door to the basement apartment and moving past Noah and Omar James, the tenant who lived in the basement apartment. Id. at 723. Petitioner broke down the door to the basement bedroom, found Jolliffe in the bedroom, and stabbed her fifteen times in the chest and stomach. Id. at 724, 781. Petitioner then fled the scene. Id. at 702–03. Tanishka called 911; police officers and EMS arrived at the scene and discovered Jolliffe's body. Id. at 698, 704. Jolliffe was transported to the hospital where she was pronounced dead. Id. at 32, 763.

Petitioner fled to Ricardo Escalona's house at 765 Stanley Avenue in Brownsville. Id. at 35, 749–50. When petitioner arrived, Escalona noticed that he had blood on his clothes. Id. at 750–51. Petitioner told Escalona that he had killed Jolliffe by stabbing her. Id. When Escalona asked

---

[2] The Court refers to witnesses who share the same last name by their first names.

him why, petitioner stated that "she probably was fooling around on—was cheating on [petitioner]." Id. at 751.

Escalona called Noah, who was speaking with Detective David Miller at the time. Id. at 34, 726–27, 751. Noah informed Miller that he knew petitioner's location, and Miller, along with Detective Henn and Detective Lawrence Wein went to Escalona's address. Id. at 35, 727.

When petitioner exited Escalona's apartment, the detectives announced themselves and petitioner attempted to flee. Id. at 36. The detectives arrested petitioner and transported him to the 69th Precinct. Id. at 36–37. Henn read petitioner his Miranda warnings, and petitioner responded that he understood the warnings, waived his right to counsel, and invoked his right to remain silent. Id. at 38–40. However, after being Mirandized, petitioner stated,

> I got a call from Noah who said Leo was in the house. I went to the house and broke the window. I got a knife and chased Leo out of the house. I left. I through [sic] the knife away. I don't remember where. I know I'm gonna go to prison. Then I'm gonna get deported back to Panama. I have prostate cancer, and I could not perform for my wife. It's been about a year. And she was being unfaithful to me.

Id. at 41. After making this statement, petitioner requested a lawyer. Id.

## II.    Petitioner's Trial

Petitioner was tried by a jury in Kings County Supreme Court from July 29, 2014 to August 8, 2014 before the Honorable Deborah A. Dowling. Id. at 10–965. Petitioner was charged with Murder in the Second Degree (N.Y. Penal Law § 125.25) and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01). Id. at 112. On August 28, 2014, petitioner was found guilty of Murder in the Second Degree.[3] Id. at 961. He was sentenced to twenty-five years to life in prison. Id. at 990.

---

[3] The jury did not consider the Criminal Possession of a Weapon charge because the murder conviction obviated the need for deliberations on that charge. T.T. at 958.

Despite initial questions about his mental health, petitioner was found fit to stand trial. T.T. at 24. During the first day of the proceedings, petitioner stated, "I don't want this man [Joel Walter, his assigned counsel] to represent me." Id. at 11. As petitioner had already changed counsel once, Justice Dowling advised him that he would have to represent himself, which she cautioned against. Id. at 13, 18, 22. Petitioner understood he either had to represent himself or he could continue with his assigned counsel; he decided to proceed with his assigned counsel. Id. at 22.

The prosecutor discussed petitioner's recorded phone calls from Rikers Island. Id. at 68, 431. The prosecutor shared that in the first call, petitioner stated, "I killed [Jolliffe] for what she did to me[,]" and then in the other calls, petitioner discussed his "motive and his intent . . . anger at [Jolliffe]" and "describe[d] [how] it's her fault." Id. at 68. Justice Dowling reviewed the calls with the parties and ruled that portions of certain calls were relevant and admissible at trial. Id. at 431–45.

During this discussion, petitioner's counsel advocated for the admission of the entirety of one phone call, stating, "[m]y client was operating under extreme emotional disturbance. That's what this whole thing is. And that's based upon him being a lifelong alcoholic. And I think that demons should come in." Id. at 444. The "demons" petitioner's counsel alluded to were referenced by petitioner in one of the recorded phone calls from Rikers, in which petitioner stated he was being manipulated by demons. Id. at 444–45. The prosecutor argued there was "[n]o evidence of any kind of psychological diagnosis here. No evidence of any kind of psychological treatment in the past." Id. at 444. Justice Dowling agreed that any expert witness testimony regarding petitioner's mental status had "nothing to do with demons or delusional thinking or hearing voices," and precluded petitioner's counsel from introducing the phone call regarding demons. Id. at 445.

4

In his opening statement, petitioner's counsel told the jury that his client had "acted under extreme emotional disturbance. That's a psychiatric term. He acted because he was drunk. And he was a lifelong alcoholic, and that caused him to always function differently than normal people[.]" Id. at 486. Vonetta testified petitioner had two drinks around 5:00 p.m. on the day of Jolliffe's murder. Id. at 554.

On the tenth day of the trial, Justice Dowling permitted Dr. Azariah Eshkenazi, a defense expert witness, to testify regarding petitioner's mental state. Id. at 788, 807. Justice Dowling allowed Eshkenazi to testify whether petitioner's alcoholism "would affect his cognitive ability to remember[.]" Id. at 793. She allowed Eshkenazi "to opine based upon what he has before him and his interviews, the condition of the individual[,]" for the limited purpose of establishing that petitioner "suffered from a certain condition [chronic alcoholism and drug abuse]," over the prosecution's objection. Id. at 793–94, 803–04. Eshkenazi testified that he diagnosed petitioner with chronic drug and alcohol abuse. Id. at 814–16. Dr. Marc Tarle testified as the People's expert, opining that petitioner's anger toward Jolliffe was "intense, unresolved" and that petitioner "was able to form the intent to stab the victim." Id. at 846–47.

Petitioner's counsel discussed petitioner's capacity to form intent in his summation, stating that based on petitioner's chronic drug and alcohol abuse "[t]here's no question that [petitioner] caused the death of Maritza Jolliffe, but he wasn't in his right mind when he was doing it. He did it. He doesn't remember. He can't testify because he doesn't remember it." Id. at 868. Petitioner's counsel conceded that "this is not a case of whodunit. It's a case of why it happened. My client wasn't in the right state of mind when he took Ms. Jolliffe's life. He was acting under extreme emotional disturbance." Id. at 872.

### III.     Procedural History

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department and raised four claims: (1) prosecutorial misconduct based on an improper summation in which the prosecution misstated and denigrated petitioner's extreme emotional disturbance ("EED") defense; (2) ineffective assistance of counsel; (3) violation of petitioner's right to counsel based on the admission of the recorded phone calls from Rikers; and (4) that his twenty-five year to life sentence was excessive. ECF No. 5-2 at 4–6; see also ECF No. 5 at ¶ 9.

On May 18, 2016, the Appellate Division unanimously affirmed the judgment. People v. Roberts, 139 A.D.3d 985 (2d Dep't 2016); see also ECF No. 5-2 at 161–62. The Appellate Division held that petitioner's claims of ineffective assistance of counsel and improper admission of the recorded phone calls from Rikers were without merit. Id. The Appellate Division also held that petitioner's summation claim was largely unpreserved for appellate review, and in any event, the comments made by the prosecution did not deny petitioner a fair trial. Id.; see also ECF No. 5 at ¶ 10.

Petitioner sought leave to appeal to the New York Court of Appeals, seeking to review all claims that had been raised in the Appellate Division. ECF No. 5-2 at 164–73; see also ECF No. 5 at ¶ 11. The New York Court of Appeals denied petitioner's application for leave to appeal on August 10, 2016. People v. Roberts, 28 N.Y.3d 936 (2016) (Fahey, J.); ECF No. 5-2 at 188.

Petitioner then moved *pro se* for a writ of error *coram nobis* in the Appellate Division, raising ineffective assistance of appellate counsel. ECF No. 5-2 at 190–208; see also ECF No. 5 at ¶ 13. Petitioner claimed his appellate counsel was ineffective for failing to raise two allegedly meritorious grounds: (1) the verdict was against the weight of the evidence; and (2) the trial court

6

did not give the defense proper notice of and an opportunity to respond to a jury note (O'Rama claim). ECF No. 5-2 at 195. The Appellate Division denied petitioner's application for a writ of *coram nobis*, holding that he failed to establish ineffective assistance of appellate counsel. People v. Roberts, 153 A.D.3d 944 (2d Dep't 2017); ECF No. 5-2 at 254. Petitioner sought leave to appeal to the New York Court of Appeals and his application was denied. People v. Roberts, 30 N.Y.3d 1063 (2017) (Feinman, J.); ECF No. 5-2 at 263.

### IV.    Instant Petition

Petitioner filed the instant *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 on February 12, 2019.[4] ECF No. 1, Petition for Writ of Habeas Corpus ("Pet."). Petitioner raises the three claims that he raised on direct appeal and a free standing O'Rama claim independent from his ineffective assistance of counsel claim. Specifically, petitioner challenges his conviction stating he was denied a fair trial due to: (1) the prosecutor's improper comments during summation; (2) ineffective assistance of counsel for inadequately raising the EED defense; and (3) the erroneous admission petitioner's recorded phone calls from Rikers. Id. at 5–8. Petitioner also raises an O'Rama claim alleging that a jury note was not delivered to petitioner's counsel at trial. Id. at 9. Respondent opposes the petition, ECF No. 5 ("Opp. Aff. and Memo"); ECF Nos. 5-1–5-2, and petitioner filed a reply, ECF No. 10 ("Reply").

### DISCUSSION[5]

### I.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a "district court shall entertain an application for a writ of *habeas corpus* in behalf of a person in custody

---

[4] References to the petition (hereinafter "Pet.") are to the ECF page numbers.
[5] Although respondent notes that the petition was untimely, he does not assert a statute of limitations defense. Opp. Aff. and Memo at 7 n.1.

pursuant to the judgment of a State court only on the ground that he is in custody in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA,

the reviewing court may only grant a habeas petition if the claim "was adjudicated on the merits

in State court proceedings" and the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence present in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' . . . and 'highly deferential standard[,]'"and

review "is limited to the record that was before the state court that adjudicated the claim on the

merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). A state court decision

is "contrary to" clearly established Federal law if "the state court reached a conclusion of law that

directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are

materially indistinguishable from a relevant Supreme Court precedent,'" the state court arrived at

an opposite result. Evans v. Fischer, 712 F.3d 125, 132 (2d. Cir. 2013) (quoting Williams v. Taylor,

529 U.S. 362, 405 (2000)).

A state court decision is an "unreasonable application" of clearly established federal law if

the "State court identifies the correct governing legal principle from [Supreme Court] decisions

but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

413. The Court cautions, however, that "an *unreasonable* application of federal law is different

from an *incorrect* application of federal law." Id. at 410; see also Grayton v. Ercole, 691 F.3d 165,

174 (2d. Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was

not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases

8

where there is no possibility fair[-]minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011).

## II.       Exhaustion and Procedural Default

A petitioner in custody pursuant to a state court judgment must exhaust his state court remedies prior to seeking federal habeas review. 28 U.S.C. § 2254(b)(1); <u>see</u> <u>also</u> <u>Davila v. Davis</u> 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'") (citation omitted). To exhaust state court remedies, the petitioner must satisfy the "fair presentation" requirement. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004). A petitioner fairly presents a claim only if he "has informed the state court of both the factual and legal premises of the claim he asserts in federal court[,]" such that the state courts were "fairly alerted" to the claim's federal nature. <u>Bierenbaum v. Graham</u>, 607 F.3d 36, 47, 49 (2d Cir. 2010) (citations and quotation marks omitted); <u>see</u> <u>also</u> <u>Baldwin</u>, 541 U.S. at 32 (clarifying that a petitioner can "indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); <u>Acosta v. Artuz</u>, 575 F.3d 177, 188 (2d Cir. 2009) ("[A] claim is not 'fairly presented' to a state appellate court if discovery of that claim requires the court to 'read beyond a petition or a brief (or a similar document)' and conduct its own review of proceedings below.") (quoting <u>Baldwin</u>, 541 U.S. at 32).

An "important 'corollary' to the exhaustion requirement" is the procedural default doctrine, which provides that federal courts have no authority to review state court decisions that rest upon adequate and independent state law grounds. <u>Davila</u>, 137 S. Ct. at 2064 (citation omitted); <u>see</u>

also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment[.]'") (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee v. Kemna, 534 U.S. 362, 375 (2002) (citing Coleman, 501 U.S. at 729); Whitley v. Ercole, 642 F.3d 278, 285 (2d Cir. 2011). Federal habeas review of a claim is foreclosed where the state court has expressly relied on the petitioner's procedural default as an adequate and independent state law ground. Green, 414 F.3d at 294 (citation omitted); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (*per curiam*). A petitioner may, nevertheless, obtain federal habeas review of a procedurally defaulted claim, if petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748–50).

### III.    Petitioner's Claims

#### a.  Petitioner's <u>O'Rama</u> Claim is Procedurally Barred

Petitioner claims he exhausted his O'Rama[6] claim because it was "fairly presented" to the Appellate Division Second Department in his writ of error *coram nobis*, which was denied August 30, 2017.[7] Pet. at 9; Reply at 9; ECF No. 5-2 at 195–97, 202–04. Respondent argues that this

---

[6] See People v. O'Rama, 78 N.Y.2d 270 (1991) (The Court has a duty to provide counsel with "meaningful notice" of a jury's inquiry — meaning "notice of the actual specific content of the jurors' request" or note).

[7] Petitioner labels his O'Rama claim as a "mode of proceedings error." Pet. at 9. The New York Court of Appeals has interpreted Section 310.30 as requiring the trial court to give a "meaningful response to the jury," and has held that failure to do so constitutes an "error affecting the mode of proceedings[.]" People v. Alcide, 21 N.Y.3d 687, 692 (2013) (citations omitted); O'Rama, 78 N.Y.2d at 276 ("CPL 310.30 [] imposes two separate duties on the court following a substantive juror inquiry: the duty to notify counsel and the duty to respond.").

However, as discussed herein, petitioner's claim should be denied because it is grounded solely in state law, not Federal law as required by 28 U.S.C. § 2254(d)(1). The record reflects that the trial court's conduct in handling the jury note did not irreparably taint the entire trial. T.T. at 532–33; see e.g., People v. Floyd, 97 A.D.3d 837 (2d Dep't 2012) ("the trial court's failure to mark the jury notes in strict compliance with the procedure set forth in O'Rama

ground is procedurally barred from federal habeas review. Opp. Aff. and Memo at 7–9, 16. This Court agrees.

Petitioner raised his O'Rama claim in his writ of error *coram nobis* within his ineffective assistance of appellate counsel claim. ECF No. 5-2 at 190, 192, 195–97, 202–04. "[C]ourts in this circuit have consistently recognized[] an ineffective assistance claim is an insufficient vehicle for exhausting the underlying allegations when those allegations are asserted for the first time as separate claims on habeas." Hall v. Phillips, No. 04 CV 1514 (NGG)(VVP), 2007 WL 2156656, at *5 (E.D.N.Y. July 25, 2007) (citing cases); see also Rush v. Lempke, 500 Fed. App'x 12, 15 (2d Cir. 2012) (summary order) (Courts have thus declined to find a claim to be exhausted when it has been presented to the state courts only in the context of an ineffective assistance claim.).[8] Accordingly, petitioner's O'Rama claim remains unexhausted because he failed to raise it as an independent claim in state court.

Collateral relief is unavailable to petitioner because the O'Rama claim, as a record-based claim, should have been raised on direct appeal, but it was not. See O'Kane v. Kirkpatrick, No. 09 Civ. 05167 (HB)(THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011), adopted by, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011) ("[A]ll claims that are record-based must be raised in a direct appeal . . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10.") (citations omitted); Lowman v. New York, No. 09 Civ. 0058T, 2011 WL 90996, at *9 (W.D.N.Y. Jan. 11, 2011) ("Collateral review of this claim—by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but

---

does not require reversal because the court fulfill[s] its core responsibilities under CPL 310.30 by reading each note in the record in the presence of defense counsel, and giving defense counsel a meaningful opportunity to participate in the formulation of the court's response.").
[8] The Clerk of Court is directed to send petitioner the attached copies of all the unreported cases cited herein.

unjustifiably was not.)" (citing N.Y. C.P.L. § 440.10(2)(c)). Therefore, because petitioner can no longer raise his O'Rama claim in state court, the claim is procedurally barred.[9] Jackson v. Conway, 763 F.3d 115, 143–44 (2d Cir. 2014); Clark v. Perez, 510 F.3d 382, 390 (2d Cir. 2008); King v. Phillips, No. 03 CV 4183 (CBA), 2005 WL 1027545, at *3 (E.D.N.Y. May 2, 2005) ("there are no longer means by which such claims can be presented to the state's highest court, because [petitioner] has used his one permissible request for leave to appeal to the New York Court of Appeals.") (citing cases).

### b. Petitioner's Summation Claim is Procedurally Barred

Petitioner argues that the prosecutor's summation deprived him of due process and a fair trial. Pet. at 5; Reply at 13–17. Respondent argues that this ground is procedurally barred, and in any event, is meritless. Opp. Aff. and Memo at 9–10, 13–14. This Court agrees.

Petitioner objected to the prosecutor's comments regarding the EED legal standard as it applies to the difference between manslaughter and intentional murder. T.T. at 892–93. The Appellate Division rejected petitioner's improper summation claim explaining that it was "largely unpreserved for appellate review, since the [petitioner] failed to object to many of the remarks he now challenges." People v. Roberts, 139 A.D.3d 985 (2d Dep't 2016) (citing N.Y. C.P.L. § 470.05(2)); see also ECF No. 5-2 at 161–62.

---

[9] Even if this Court were to consider petitioner's O'Rama claim, it is without merit. New York Criminal Procedural Law Section 310.30, as discussed in People v. O'Rama, requires that "whenever a substantive written jury communication is received by the Judge, it should be marked as a court exhibit and, before the jury is recalled to the courtroom, read into the record in the presence of counsel." O'Rama, 78 N.Y.2d at 277–78. Section 310.30 has no corollary under federal law; thus, any alleged error in the trial court's handling of the jury note was solely a violation of state law, not a constitutional violation. Therefore, petitioner's O'Rama claim, even if considered on the merits, is not a basis for habeas relief. See Cornado v. Bellnier, No. 10 Civ. 5265 (RA)(HBP), 2012 WL 6644637, at *5–6 (S.D.N.Y. Sept. 20, 2012), adopted by, 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012) ("A claim premised on a violation of New York Criminal Procedure Law Section 310.30 does not allege a violation of a federally protected right.") (citing cases).

Parties are required to make specific contemporaneous objections at trial to preserve issues for appellate review. N.Y. C.P.L. § 470.05(2). The contemporaneous objection rule is an adequate and independent state law ground that procedurally bars habeas review of petitioner's summation claim. Whitley, 642 F.3d at 286–87; Vargas v. Keane, 86 F.3d 1273, 1280 (2d Cir.1996) (holding that unpreserved claims about a prosecutor's comments during closing arguments are barred by adequate and independent state law grounds). Thus, except for the objected to comments which are discussed in Part III b. i., *infra*, petitioner's improper summation claim is procedurally barred from federal habeas review.

Petitioner fails to demonstrate cause for the procedural default and resulting prejudice, see Vargas, 86 F.3d at 1280 (citing Wainwright v. Sykes, 433 U.S. 72, 87–91 (1977)), or a fundamental "miscarriage of justice," Aparicio, 269 F.3d at 90 (citation omitted). Accordingly, petitioner's prosecutorial misconduct claim based on comments he failed to object to during the People's summation is procedurally barred.

### i.    Petitioner's Summation Claim is Without Merit

Even if petitioner's summation claim was not procedurally barred and could be reviewed, it should be denied as without merit. Petitioner claims that the prosecutor's improper remarks "denigrated the defense[.]" Pet. at 5. He adds that the prosecutor "inappropriately and incorrectly instructed the jury on the law[] regarding [EED]," "blatantly mischaracterized testimony to undermine the [EED] defense, became an unsworn witness, vouched for his witnesses, and appealed to each juror's sympathy." Id. Respondent argues even if this ground is not procedurally barred, it is meritless. Opp. Aff. and Memo at 13–14. This Court agrees.

Again, petitioner cannot demonstrate that the trial court's decision was contrary to or an unreasonable application of clearly established Federal law. 28 U.S.C.§ 2254(d). The Appellate

Division ruled that "[t]o the extent that . . . the prosecutor's remarks made during summation were improper, those remarks did not deprive the defendant of a fair trial[.]" People v. Roberts, 139 A.D.3d 985 (2d Dep't 2016); see also ECF No. 5-2 at 161–62. Furthermore, the Appellate Division discussed that "any other error in this regard was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that the error contributed to the defendant's conviction." Id.

A prosecutor's comments do not deprive a defendant of a fair trial unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Courts have discretion to determine whether a prosecutor's conduct rises to the level of denying the defendant a fair trial. See Parker v. Matthews, 567 U.S. 37, 48 (2012) ("[T]he Darden standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations[.]'") (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Court looks at the impact of the alleged prosecutorial misconduct on the trial as a whole and determines whether the comments were "sufficient to undermine the fairness of the proceedings when viewed in context." Jackson, 763 F.3d at 146. A prosecutor's inappropriate comments during closing do not undermine the fairness of the proceedings unless the evidence presented is "so closely balanced that the prosecutor's comments [are] likely to have had a substantial effect on the jury." Tankleff v. Senkowski, 135 F.3d 235, 253 (2d Cir. 1998).

Petitioner's primary allegation is that the prosecution "inappropriately and incorrectly instructed the jury on the laws regarding extreme emotional disturbance," and relatedly, that the prosecution "denigrated the defense." Pet. at 5. During summation, the prosecution set forth the requirements for establishing the affirmative EED defense, stating, "part one of the test . . . is

14

objective reason. So you see your child hurt by someone, and you just attack that person. Lose your mind for a second. That's what we're talking about in terms of extreme emotional disturbance." T.T. at 892–94. The prosecution continued that "[p]art two of the test is whether the person who had that reason actually had that big emotion." Id. Justice Dowling overruled many of petitioner's counsel's objections to the prosecutor's explanation of EED, stating, "certainly [the prosecution] can make arguments in regard to what they wish [the jury] to consider, but, again, I'm the sole and exclusive judge of the law." Id. at 892. Justice Dowling reiterated this point while overruling another objection by petitioner's counsel, explaining, "after you [the jury] determine the facts, you will apply the law as given to you by the Court, and you will make a decision based upon the facts as you have decided them and under the law as charged by the Court." Id. at 897.

EED is an affirmative defense which requires a defendant to have acted under the influence of an EED for which there was a reasonable explanation or excuse. N.Y. C.P.L. § 125.25(1)(a). The jury determines the reasonableness "from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." Id. The state court's decision allowing the prosecution's characterization of EED as a two-part test was not an unreasonable application of clearly established Federal law. Moreover, petitioner fails to establish that he "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence on the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994).

As for the prosecutor's use of the word "we" which petitioner claims improperly expressed an opinion and vouched for the prosecution's witnesses, Pet. at 5, ECF No. 5-2 at 47, this claim is without merit. T.T. at 884–85, 896, 898; see Tankleff, 135 F.3d at 253 (prosecutorial misconduct

15

claim rejected on habeas where "prosecutor's comments were short and fleeting and, thus much less likely to have had a substantial effect on the jury's verdict").

Furthermore, Justice Dowling instructed the jury both at the beginning and end of the trial that the summations were not evidence. T.T. at 452, 865–66, 906–07; Jackson, 763 F.3d at 150. As discussed in Darden, although petitioner's trial may not have been "perfect" it was also not "fundamentally unfair." 477 U.S. at 183. Petitioner's summation claim should be denied as the state court's decision regarding the prosecution's summation was not contrary to, or an unreasonable application of, clearly established Federal law.

### c.  Petitioner's Ineffective Assistance of Counsel Claim

Petitioner argues that he was denied a fair trial based on ineffective assistance of trial counsel because counsel failed to meaningfully advance petitioner's EED defense. Pet. at 6; Reply 17–22. Petitioner argues: (1) counsel should have suggested that the trial court's instructions on EED be modified to avoid confusion and misapplication of the law in light of the "intoxication" charge and the prosecution's erroneous legal instructions in summation; (2) counsel should have requested a limiting instruction at the time prior crimes evidence was improperly introduced and when the prosecution's expert testified that petitioner was prone to violence, and objected when an additional prior bad act was elicited; and (3) counsel should have objected to multiple egregious improprieties in the prosecution's summation. Pet. at 6. Petitioner further argues that that the admission of his recorded phone calls from Rikers into evidence deprived him of his right to effective assistance of counsel. Id. at 8. Respondent argues that petitioner's ineffective assistance of counsel claim is without merit. This Court agrees.

To establish a claim of ineffective assistance of counsel, petitioner must show that: (1) counsel's performance was deficient and (2) petitioner suffered prejudice as a result of the deficient

performance. Strickland v. Washington, 466 U.S. 668, 687–88 (1984). Counsel's performance must fall "below an objective standard of reasonableness" to be deficient. Id. Specifically, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." Id. at 686.

To establish prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Reasonable probability is "[a] probability sufficient to undermine confidence in the outcome." Id. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and that counsel's actions were part of a "sound trial strategy." Id. at 689–90. The combined deferential standards of review under AEDPA and Strickland create a "doubly" deferential standard of review. Harrington, 562 U.S. at 105. A court should "assess counsel's overall performance throughout the case" when evaluating a claim of ineffective assistance. Kimmelman v. Morrison, 477 U.S. 365, 386 (1986).

Here, petitioner's claim fails both prongs of Strickland by failing to demonstrate that counsel's performance was deficient and that petitioner suffered prejudice as a result of the deficient performance. Petitioner's counsel successfully advocated for an expert witness to testify on petitioner's behalf regarding his chronic alcohol abuse to support the EED defense. T.T. at 788–94, 809. Petitioner's counsel also objected to the prosecution's questioning of its expert witness regarding petitioner's prior bad acts, and Justice Dowling sustained counsel's objections and struck this testimony from the record. Id. at 837–38. Petitioner's counsel also objected to the admission of certain portions of the recorded phone calls from Rikers. Id. at 442–44. Throughout trial, petitioner's counsel repeatedly argued that petitioner's mental state and substance abuse constituted an EED that led him to murder Jolliffe. Id. at 868, 872. In short, the record reflects that

17

defense counsel raised an appropriate EED defense throughout the trial, and argued zealously on petitioner's behalf during summation. T.T. at 868–72.

Petitioner's counsel objected on a number of occasions during the prosecutor's summation. T.T. at 892–96. Justice Dowling overruled the objections and stated she would instruct the jury as to the law regarding EED. Id. at 896–97. At the conclusion of the prosecutor's summation, petitioner's counsel moved for a mistrial. Id. at 896. Justice Dowling denied petitioner's request, stating that the prosecution was entitled to put forth the People's argument. Id.

The Appellate Division found that petitioner's counsel's "failure to object to certain summation remarks did not constitute ineffective assistance of counsel" and "defense counsel provided meaningful representation[.]" People v. Roberts, 139 A.D.3d 985 (2d Dep't 2016); see also ECF No. 5-2 at 161–62. The Appellate Division also held that petitioner's "contention that the admission of recorded phone calls made during his detention at Rikers Island violated his right to counsel under the state and federal constitutions is without merit[.]" Id. Counsel's performance was "within the range of acceptable strategic and tactical alternatives and did not cause the representation to fall below the constitutionally acceptable level mandated by Strickland." United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998). Having thoroughly reviewed the record, I find that the state court's decision regarding petitioner's ineffective assistance claim was not contrary to, or an unreasonable application of clearly established Federal law. Therefore, petitioner's ineffective assistance of counsel claim should be denied.

18

## CONCLUSION

Accordingly, it is respectfully recommended that petitioner's application for a writ of *habeas corpus* should be denied.[10] As petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259–60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

                                                       /S/

                                          LOIS BLOOM

Dated: August 31, 2020                           United States Magistrate Judge
       Brooklyn, New York

---

[10] Petitioner's requests for counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006(A), and for an evidentiary hearing, Reply at 25, are denied.

19